**BELLAMAH, NEUHAUSER & BARRETT, INC., Plaintiff,**

v.

**HANOVER INSURANCE COMPANY, Defendant.**

Civ. A. No. 80–0771.

United States District Court, District of Columbia.

July 9, 1980.

Jeremiah C. Collins and F. Whitten Peters, Washington, D. C., for plaintiff.

F. Joseph Nealon and Stanley Morris, Washington, D. C., for defendant.

MEMORANDUM

GASCH, District Judge.

This is an action for damages and declaratory relief for breach of contract. Defendant Hanover Insurance Company ("Hanover") moves for partial summary judgment on count I of the complaint. Plaintiff Bellamah, Neuhauser & Barrett, Inc. ("Bellamah") opposes Hanover's motion, and moves for partial summary judgment on the issue of coverage raised in count I. Hanover opposes Bellamah's motion. For the reasons set forth below, the Court grants Hanover's motion, denies Bellamah's motion, and enters judgment for Hanover on count I of the complaint.

I.

The relevant facts are undisputed. On May 30, 1974, Bellamah and Hanover entered into a contract for insurance designated "Stockholders Blanket Bond No. F–303977–C" (the "Bond"), which was effective from noon on April 27, 1974 until July

23, 1979.[1] In the bond, Hanover (the Underwriter) agreed "to indemnify and hold harmless" Bellamah (the Insured) for, *inter alia*,

> Loss of Property (occurring with or without negligence or violence) through ... mysterious unexplainable disappearance ... and loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) lodged or deposited within any offices or premises ....[2]

The limit of Hanover's liability for the mysterious unexplainable disappearance of property was $750,000.[3]

Sometime between 8:30 P.M. on March 29, 1979 and 8:30 A.M. on March 30, 1979,[4] securities with a face value of approximately $1.8 million disappeared from Bellamah's offices.[5] This loss of securities was a loss of property as to which coverage was available under the Bond.[6] Hanover subsequently replaced $750,000 of the missing securities (face value) by issuing lost instrument bonds and obtaining duplicate securities from the issuing agents.[7] In replacing these securities, Hanover spent less than $750,000.[8] If the missing securities are presented by a holder in due course, Hanover will have to pay the face value of the securities, *i.e.*, $750,000.[9]

## II.

The question presented by the parties' cross-motions is whether Hanover has fully complied with the terms of the Bond. Hanover urges the Court to answer this question in the affirmative. Hanover maintains that its obligations under the Bond are limited to the replacement of securities with a face value of $750,000. Bellamah, on the other hand, submits that the question presented should be answered in the negative. Bellamah contends that Hanover must indemnify Bellamah for all losses Bellamah has suffered and may in the future suffer as a result of the loss of the securities with a face value of approximately $1.8 million until Hanover incurs costs equalling $750,000 as a result of such indemnification.

Two provisions contained in the section of the Bond entitled "VALUATION" are relevant to the resolution of the question presented here. The first of these provisions reads as follows:

Securities

> The value of any securities, for the loss of which claim shall be made under this bond, shall be determined by the cost of an equivalent amount of securities of the same issue purchased by or at the instance of the Underwriter; provided, however, that if prior to such purchase by or at the instance of the Underwriter, the Insured shall be compelled, by the demands of a third party or by market rules, to assume the cost of an equivalent amount of securities of the same issue, and shall notify the Underwriter, in writing, of such compulsion, such cost shall be taken as the value of such securities.

---

1. Complaint, ¶ 4; Answer, ¶ 4.

2. Exhibit A to Complaint, at 2.

3. *Id.* at 1. This $750,000 limit was subject to a deductible of $2,500. *Id.* at 19. Because there is no disagreement between the parties as to the proper treatment of the deductible amount, the Court does not address in this memorandum the applicability of the deductible amount to Bellamah's claim.

4. The complaint erroneously states that this loss occurred between March 28, 1979 and March 29, 1979. Complaint, ¶ 5. This loss in fact occurred between March 29, 1979 and March 30, 1979. Defendant's Memorandum of Points and Authorities in Support of the Motion for Partial Summary Judgment ("Def.'s Mem."), at 1 n.*; Plaintiff's Memorandum in Answer to Defendant's Motion for Partial Summary Judgment and in Support of Plaintiff's Cross-Motion for Partial Summary Judgment ("Pl.'s Mem."), at 2 n.2.

5. Complaint, ¶ 5; Answer, ¶ 5.

6. Complaint, ¶ 7; Answer, ¶ 7.

7. Complaint, ¶ 7; Answer, ¶ 7.

8. Complaint, ¶ 10; Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute, ¶ 6.

9. Affidavit of Russell E. Miller, ¶ 4.

The amount of the Insured's claim on account of any such loss shall be deemed the cost of such securities as herein determined....[10]

The second pertinent provision reads as follows:

### Loss of Securities

If the applicable coverage of this bond is not sufficient in amount to indemnify the Insured in full for the loss of securities for which claim is made hereunder, the liability of the Underwriter under this bond is limited to the payment for, or the duplication of, so much of such securities as has a value equal to the amount of such applicable coverage and in such event, the Insured shall assign to the Underwriter all its rights, title and interest in and to those securities for which such payment or duplication is made by the Underwriter.[11]

The "Securities" provision quoted above establishes two methods for determining the amount of a claim for the loss of securities. First, it provides that the amount of the claim is the cost of an equivalent amount of securities purchased by Hanover. Second, in the event that the Insured is required to assume the cost of an equivalent amount of securities, the amount of the claim is the cost assumed by the Insured. Under either method, therefore, the amount of the claim is the cost of an open market purchase of an equivalent amount of securities.

Neither of these two methods for determining the amount of a claim for a loss of securities is expressly applicable here, however. As indicated above, Hanover did not purchase an equivalent amount of securities, nor was Bellamah required to assume the cost of an equivalent amount of securities. Rather, the lost securities were replaced by duplication, i.e., by issuing lost instrument bonds and obtaining duplicate securities.

The absence of any express statement in the Bond as to how to determine the amount of the claim for the loss of securities under such circumstances is at the center of the dispute between the parties. On the one hand, Hanover argues that the amount of Bellamah's claim is what it would have cost to purchase an equivalent amount of securities. On the other hand, Bellamah contends that the amount of the claim is the cost to date of replacing the missing securities by duplication. The Court agrees with Hanover's argument and finds Bellamah's contention to be without merit.

The Court's conclusion is based on several factors. One important factor is that the "Securities" provision does not state that the two methods described therein are the exclusive methods for determining the amount of a claim for the loss of securities. This omission indicates that other methods are possible. It further indicates that other methods are acceptable provided that they are consistent with the two methods set forth in the "Securities" provision.

The method suggested by Hanover for determining the amount of a claim for the loss of securities when the missing securities are replaced by duplication is entirely consistent with the two methods set forth in the "Securities" provision. Hanover's method, like the other two methods, focuses on the value of the securities for which a loss is claimed. In other words, under each of these three methods, the amount of the claim would be the cost of an open market purchase of an equivalent amount of securities.

The method suggested by Bellamah for determining the amount of the claim for the loss of securities when the missing securities are replaced by duplication is inconsistent with the two methods set forth in the "Securities" provision. Bellamah's method, unlike the other two methods, does not focus on the value of the missing securities. In addition, under Bellamah's method, unlike under the other two methods, it is difficult, if not impossible, to ascertain the exact amount of the claim. This is because,

---

10. Exhibit A to Complaint, at 3.

11. *Id.* at 4.

under Bellamah's method, the amount of the claim would always be subject to an increase in the event that some or all of the missing securities are presented by a holder in due course.

Another important factor in the Court's conclusion is that the "Securities" provision does not state that the cost of replacing the missing securities by duplication has any relevance to a determination of the amount of a claim. This omission is particularly significant for two reasons. First, other provisions of the Bond recognize that duplication is an appropriate way of replacing missing securities.[12] Second, as both parties agree, the replacement of missing securities by issuing lost instrument bonds and obtaining duplicate securities is customary in the industry.[13]

Given the other references to duplication in the Bond and the industry custom of replacing missing securities by duplication, the absence of any reference to duplication in the "Securities" provision must be viewed as intentional. It follows, therefore, that it would be inappropriate to rely in any respect on the cost of duplication in determining the amount of a claim for the loss of securities. Hanover's suggested method for determining the amount of a claim correctly avoids any such reliance, and instead focuses on the value of the missing securities. In contrast, Bellamah's suggested method wrongly relies on the cost of duplication in determining the amount of a claim.

■ The Court thus concludes that the amount of a claim for the loss of securities when the missing securities are replaced by duplication is what it would cost to purchase (not duplicate) an equivalent amount of securities. Under this formula, the amount of Bellamah's claim for the loss of securities would be the face value of the missing securities, approximately $1.8 million.

Having determined the amount of Bellamah's claim, the Court turns to consider the "Loss of Securities" provision quoted above. This provision indicates that where the applicable coverage of the Bond is insufficient to cover fully the loss of securities for which a claim is made, Hanover's liability is limited to the payment for, or the duplication of, so much of such securities as has a value equal to the amount of the applicable coverage.

■ An application of this provision to the facts here indicates that Hanover has fully complied with the terms of the Bond. As indicated above, the applicable coverage of the Bond was $750,000. This amount was insufficient to cover fully Bellamah's claim of $1.8 million. Hanover's liability was thus limited to payment for, or duplication of, securities with a face value of $750,000. Hanover chose to duplicate $750,000 of the missing securities (face value). Hanover, therefore, has fulfilled its obligations under the Bond.

12. The "Loss of Securities" provision quoted above indicates that, in the event that the applicable coverage of the Bond is insufficient to cover fully a loss of securities, Hanover's liability is limited to the payment for, or the duplication of, so much of such securities as has a value equal to the amount of the applicable coverage. Exhibit A to Complaint, at 4. The same provision further indicates that, in such event, the Insured must assign to Hanover all its rights, title, and interest in and to those securities for which such payment or duplication is made by Hanover. *Id.* Moreover, another section of the Bond, entitled "Loss—Notice—Proof—Legal Proceedings," indicates that "duplicates may be obtained" to settle a claim for lost securities. *Id.* at 3.

13. Pl.'s Mem., at 10; Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Def.'s Opp."), at 1. *See also* Affidavit of Frederick J. Bellamah, ¶ 7; Deposition of Kevin J. Donnelly, at 12–13.

It is significant that this industry custom has been incorporated in the Uniform Commercial Code, which has been adopted in all fifty states and the District of Columbia. Under section 8–405(2) of the Code, an issuer is required in appropriate circumstances to issue a new security in the place of a lost, destroyed, or stolen one without the necessity of a court order, if the owner (1) so requests before the issuer has notice that the security has been acquired by a bona fide purchaser, (2) files with the issuer a sufficient indemnity bond, and (3) satisfies reasonable requirements imposed by the issuer. U.C.C. § 8–405(2).

### III.

Bellamah has received the protection for which it bargained. Under the Bond, Hanover agreed to replace, by purchase or duplication, securities with a face value of $750,000. Hanover has done so by duplication, and thus has fulfilled its obligations under the Bond.

Under these circumstances, the Court grants Hanover's motion for partial summary judgment, denies Bellamah's motion for partial summary judgment, and enters judgment in favor of Hanover and against Bellamah on count I of the complaint.